S. A. JOHNSON (a Lunatic), by Guardian, etc., *v.* W. B. HELM.

**Ejectment.**

> In an action of ejectment, the plaintiff must show his title good as against the whole world to entitle him to recover.[1]

Ejectment by William B. Helm for possession of undivided half interest in lands occupied by Lewis H. Smith. By agreement W. T. Johnson, guardian of S. A. Johnson, an adjudged lunatic, and Smith's landlord, was admitted as codefendant, and defended the suit.

Jury was waived and the issue tried before the court. Judgment was for plaintiff, whereupon defendant appealed to the Supreme Court.

The opinion sufficiently states the case.

APPEALED from Circuit Court, LeFlore County, C. H. CAMPBELL, Judge.

Reversed and remanded, February 8, 1886.

*Attorneys for appellant, Hooker & Wilson.*

*Attorneys for appellee, T. H. Somerville and J. E. Gwin.*

---

[1]

The plaintiff must recover on the strength of his own legal title. Winn *v.* Cole, 1 Walk. 119.

And this is so, though the defendant show no title. Hence he cannot recover premises not embraced in his deed as against a defendant showing no title, though he prove that it was the intention of the owner to convey it in the deed. McRaven *v.* McGuire, 9 S. & M. 34.

He must show his title good against the world unless the defendant be estopped to deny it. Doe *v.* Pritchard, 11 S. & M. 327; Wolf *v.* Dowell, 13 S. & M. 103; Cunningham *v.* Dean, 33 Miss. 46.

But though he can recover only on the strength of his title, yet he will not fail merely because his evidence fails to make out his title, if the defendant's evidence with the plaintiff's shows he has a good title, for the court and jury are to decide as to title upon all the evidence before them. Wightman *v.* Reynolds, 2 Cush. 675.

The rule which requires the plaintiff to show a good title as against all the world does not apply so as to require him to show title in the person from whom both parties claim title. Doe *v.* Pritchard, 11 S. & M. 327; Wolf *v.* Dowell, 13 S. & M. 103.

Possession of land for ten years gives the possessor and those claiming under him a sufficient title to justify a recovery in ejectment against a mere intruder who has no title. Anderson et al. *v.* Moore, 84 Miss. 400.

Brief of Hooker & Wilson:

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*

The evidence shows that Stephen Johnson received the title to this land from two sources, the title to one-half from Mc. G. Wilburn, and the other half from Alexander Ferguson, receiver.   \*   \*   \*

These were the two separate and distinct sources of title in Stephen Johnson, one which he regarded as good and valuable, and the other of much less value.   \*   \*   \*

It is evident from the deeds that the grantor conveyed the title he received from Ferguson to his sons and warranted that title, and that he conveyed by quitclaim to appellee his doubtful Wilburn title.   This is apparent from the face of the deeds without reference to the other testimony, but it is manifested more clearly when examined with the aid of the testimony.

Outlaw claimed to be the owner of only one-half of the land, Wilburn's interest, by virtue of his purchase under execution sale, and never claimed any other.   Stephen Johnson claimed to be the owner of this same half, as well as the half he had purchased from Ferguson.   \*   \*   \*

The testimony shows that this was but a part of a large tract of land owned by Johnson and Outlaw.   Can a joint owner take a particular part of an entire tract and sell by metes and bounds to a stranger?   Unquestionably each party has a right to a partition of the land and one cannot forestall the other by conveying to a third party.   It is easy to suppose that a bill for partition in kind was filed and a decree entered, and that this part of the land fell to the lot of Outlaw.   Could this right be defeated by the previous sale to third party?   An analogous case is found in Miller *v.* Richardson, 48 Miss. 328–335.

Where a mortgage was given by one of several joint owners over a particular part of the joint estate, the principle there discussed and the authorities cited that the deed if at all operative was only an estoppel.

But Johnson's possession was notice of his title.   \*   \*   \*

In 1878, S. A. Johnson leased the lands to Smith.   He collected the rent and was sued by Outlaw for his portion of it. The testimony of Smith shows that S. A. Johnson was in possession of it, that he was his (S. A. Johnson's) tenant, that he paid him the rent for his half of the land.   Mitchell, another tenant of part of the lands, testified to the same effect, in substance.

\*   \*   \*

This is attempted to be overcome by proof that S. A. Johnson was the agent of his father in looking after his lands in LeFlore county. Granted that he was such agent, there is no evidence that Helm knew of such agency, or even if he did know of such agency, it does not affect his rights in this case. Being the agent of his father to look after his interest in land does not prevent him being the owner of land. It is not pretended that he misled Helm as to his ownership of a half interest, but simply promised Helm to assist him in the collection of the rent on the half interest he, Helm, had purchased from his father, the Wilburn half interest, and he did try to assist him in the collection but Outlaw collected it.

His sales and leases of the land, his occupation by his tenants, Smith and Mitchell, was sufficient notice of his deed. Taylor v. Mosley, 57 Miss. 547, and cases cited. * * *

S. A. Johnson, the appellant herein, and whom appellee seeks to estop by an alleged conversation with him in 1881 in reference to the collection of rents, is deprived of capacity to testify. His lips were as completely sealed as a witness as if he were dead. * * *

We do not think that the conversation between Helm and S. A. Johnson as to the collection of the rents was such as to preclude the defendant from asserting his title to the lands. * * *

In reference to the fourth and sixth assignments of error. The first mentioned is to the form of the judgment. We think the assignment of error is certainly well taken. S. A. Johnson, the lunatic, was the defendant through his guardian. It was not claimed that W. T. Johnson ever had or claimed any interest in the land. Yet the judgment rendered is against him both for the possession of the lands, and for the amount found to be due by the court for the use and occupation of said land. Under the judgment, the execution can only go against him, W. T. Johnson.

The sixth assignment of error brings into review the action of the lower court in refusing to grant a new trial for newly-discovered evidence. The evidence was certainly most material, and was unknown to appellant at the time of trial. By it the defendant would have shown Helm's knowledge of the condition of the title, and that the conveyance from Johnson to Helm was this disputed title between Outlaw and him, Johnson. * * *

Brief of T. H. Somerville:

The theory of appellant's counsel that the undivided half

interest in the quarter sections which was sold under execution in favor of Outlaw, administrator, against Mc. G. Wilburn, was the identical undivided half interest which Stephen Johnson purchased from Mc. G. Wilburn in 1860, and sold to appellee, W. B. Helm, in 1881, is utterly inconsistent with the record. * * *

As to Johnson's possession at the time of appellee's purchase from his father. Ordinarily possession imparts notice of title, but the court will have in mind that S. A. Johnson was not only the son of appellee's grantor, but the agent of his father in the management of these lands. And furthermore that he agreed to act as W. B. Helm's agent. At most it can only be assumed that he was the owner of, and in possession of, an undivided half interest. He recognized the title of Helm after having made an agreement to act as his agent, which was a part of the inducement to the purchase. Under these circumstances no notice can be imputed to Helm by the alleged possession of S. A. Johnson. He held possession, if at all, by tenant Smith, and after agreeing to collect the rents for Helm, he is estopped from claiming that his possession is adverse to Helm.

* * * * * * * * * * *

The third point is: "That open, notorious, adverse possession of the premises for more than ten years gives appellant a superior title."

We do not controvert this proposition of law, but such has not been the character of appellant's possession.

The most that can be contended for appellant here is that he and appellee were tenants in common, though he was a silent and secret tenant so far as Col. Helm's knowledge went. There was privity between them. Johnson assumed to act as the agent for appellee and never until the institution of this suit disclaimed the trust. Tyler on Ejectment and Adverse Possession, 876 *et seq.*

* * *

The appellee sued L. H. Smith. D. A. Outlaw took no notice of the suit, but appellant entered and was admitted to defend as the landlord of Smith. He did not with his plea give notice that he only defended as a tenant in common, or that he only claimed an undivided half interest as provided in § 2506, Revised Code 1880. On the contrary, appellant traversed plaintiff's declaration "that he demanded of L. H. Smith the possession of the equal undivided half interest in the tract." L. H. Smith was in possession of the

entire premises. The action was against Smith and Johnson jointly after the latter was admitted to defend as landlord, and plaintiff's recovery must stand against Smith and Johnson, no matter what the source of plaintiff's title and notwithstanding the fact that S. A. Johnson or D. A. Outlaw may be entitled to show the ownership as tenant in common with plaintiff. He, defendant Johnson, was called upon not to show his title, but to controvert the title of Helm to an undivided half interest. * * *

The fourth assignment of error is not supported by the record. The judgment, we submit, was not rendered against W. T. Johnson for possession and rents. W. T. Johnson, guardian of S. A. Johnson, was on his own motion admitted to defend as landlord. The judgment is styled "W. B. Helm v. Lewis H. Smith," and after reciting the admission of W. T. Johnson, guardian, to defend as landlord, the record is that plaintiff do have and recover of the *defendants* the possession of the land, * * * and that he have and recover of the defendant W. T. Johnson, guardian of S. A. Johnson, the rents, etc. * * *

We submit, in conclusion, upon the premises:

1. That appellee's title is superior to that of appellant.

2. That if the respective deeds to these parties are to be regarded as conveying the same interest, or attempting such conveyance, then appellee is a *bona fide* purchaser for value and without notice of the unrecorded *deed of gift* from appellant's father.

3. That if appellee has shown title to an undivided one-half interest his judgment must stand.

Brief of J. E. Gwin:

* * * * * * * * * * * *

It is contended that Helm had notice, or by inquiry could have had notice, of S. A. Johnson's title, by reason of his possession. This rule extends this far and no farther. That when a party is in possession of land it is the duty of any one dealing with the land, to inquire by what right he holds the land, and it is presumed that such inquiry would lead to a development of the claim under which he holds, but when the inquiry is actually made and the possessor fails to disclose his title, the rule is reversed, and the person so remaining silent, or speaking, speaks in such a manner as to deceive the other, is forever estopped from setting up his title, to the injury of the other party. * * *

Brief in reply of Hooker & Wilson.

In reply to the suggestion raised in brief of counsel for appellant, that the judgment must stand because the general issue was pleaded, and not a denial of possession as provided by section 2486, Code 1880, and that plaintiff was entitled to a judgment for a half interest against the tenant Smith, we state:

The declaration was filed claiming generally an undivided half interest. Appellant was in possession of an undivided half interest. He could not deny his possession for he was in possession of an undivided half interest in the premises in question. If he had done so, under section 2488, the plaintiff would have been entitled to judgment. And the result is, if appellant's theory is sustained, that by filing his plea denying possession, etc., plaintiff would be entitled to judgment for the land claimed in the declaration, but if he did file a plea of not guilty, then plaintiff on the facts in the case would be entitled to judgment because *such a plea was not filed.* Certainly " a most lame and impotent conclusion."

The plea is determined by the declaration, and the defendant Johnson could not be expected to deny his possession and let judgment go for plaintiff. If the declaration had been for all the lands, then the proper plea for Johnson would have been not guilty as to half and denial of possession as to the other half.

The statute more particularly refers to the defendant denying possession of parcels of a tract sued for than to aliquot parts thereof. But however that may be, it is impossible to conceive of any other plea that the defendant could have filed than not guilty. Under plaintiff's theory Helm did not claim as the cotenant of appellant Johnson, not in common with him but in opposition to him, and it was not incumbent on defendant to file any other plea than the one he filed.

The judgment is that plaintiff do have and recover of " defendants the undivided half interest of * * * which Stephen Johnson purchased from Mc. G. Wilburn " and that he recover of *defendant W. T. Johnson,* guardian of S. A. Johnson * * * the sum of $564.72. It is a judgment against Smith and Johnson for the land and against W. T. Johnson for the rents of the land.

If the judgment is good against Smith, and ought to stand, it certainly ought not to stand under the evidence against S. A. Johnson and W. T. Johnson, and we fail to see anything in the con-

dition of the pleading that makes it imperative that the judgment should stand through contrary to the evidence.

CAMPBELL, J., delivered the opinion of the court:

In February, 1873, Stephen Johnson conveyed an undivided half interest in the lands sued for to his sons, H. E. and S. A. Johnson. This conveyance vested in the grantees a half interest in the land, if the grantor had such interest, no matter whence obtained. It was operative on any half interest he had, whether derived from Wilburn or another.

There was no particularization in this conveyance of a half interest with respect to the source of its derivation, and it did not leave in the grantor a particular half interest distinguishable by its source.

The conveyance to Helm was of the particular half interest which the grantor had obtained from Wilburn, and vested in him by force of its terms that interest, if it was not affected by the former conveyance of a half interest in February, 1873.

If Stephen Johnson had the entire interest, the former conveyance left a half interest in him, and it passed to Helm by the conveyance to him, notwithstanding the particular designation of the source of title descriptive of the interest conveyed.

Stephen Johnson, in 1859, got a deed to a half interest in this land from one Ferguson, and in 1860 a deed conveying a half interest in it from Wilburn. (The paper in the record which is spoken of by counsel as the deed from Wilburn to Stephen Johnson has not the name of Johnson in it, but is to *Stephen,* and, for all the record shows, may have been to some other Stephen but this may be a clerical omission.) Whether these conveyances relate to the same or different half interests is not shown, but it does not appear that Johnson claimed to be owner of the entire interest in the land, and the evidence is suggestive that the two sources of title embraced the halves which made the whole interest.

Johnson, claiming to be owner, had possession of some part of the land, and in 1871 leased some of it to one Mitchell, who occupied for five years, and afterward leased it from S. A. Johnson and Outlaw. The deed from Stephen Johnson to S. A. Johnson and H. E. Johnson was not recorded until after the conveyance to Helm, but it is indisputable that the land was at the time Helm bought occupied by a tenant of S. A. Johnson and Outlaw. It

is true that S. A. Johnson was spoken to by Helm, and agreed to collect rent for Helm, on the Wilburn half interest, and tried and failed because of the refusal of the tenant to pay, and reported this to Helm, but in this, there is nothing inconsistent with ownership by S. A. Johnson of a half interest in the land different from the Wilburn half interest, and nothing to preclude him from claiming such interest, and collecting rent for it. If he had an undivided half interest in the land different from that conveyed to Helm, his recognition of Helm's claim and undertaking to represent him in collecting rent on Helm's interest did not prejudice his rights. It is apparent that Stephen Johnson claimed to have owned the entire interest.

He conveyed an undivided half generally to his two sons in 1873, and a particular half interest to Helm in 1881. S. A. Johnson was agent of his father, and knew that he claimed to have owned the entire interest in the land. He knew, of course, that his father had conveyed an undivided half interest to himself and brother, and that he was in possession of this half interest by the tenant Smith and in the receipt of rent for his half interest.

There was another half interest in dispute between Stephen Johnson and Outlaw, both of whom claimed an undivided half interest under Wilburn, while Johnson claimed to have derived another half interest from another source.

Interpreting the acts of S. A. Johnson by the light of these facts, it is manifest that his agreement with Helm to collect rent for the Wilburn half interest conveyed to him had reference to these conditions, and was nothing more than the assumption of an agency for Helm as to the particular interest specified, and when the tenant refused to pay rent to him for Helm, and he reported the matter to Helm, the relation between him and Helm ended.

There was nothing in this to estop S. A. Johnson to claim his own half interest which his father had conveyed in 1873, if that was a different half interest from that conveyed to Helm, and, as stated before, the evidence is strongly suggestive that the two half interests in the land had been acquired from different sources by Stephen Johnson, who conveyed one, generally, to his two sons, and the other by particular designation to Helm. S. A. Johnson did nothing to deceive or mislead Helm. He was under no obligation to disclose to Helm his title to an undivided half interest generally in the land. He had, as he assumed and as is supposed,

a perfect title to a half interest in the land, and had possession of it by his tenant. He made no claim to the particular half interest conveyed to Helm. That was quite distinct from what had been conveyed to him. He and Helm had claims to different interests. He was in the enjoyment of his interest and was willing to act as agent for Helm to collect rent accruing on his interest, and he made an effort to do this, and failed, and reported his failure to Helm. That terminated the relation between them. Helm instituted this action against Smith, the tenant. S. A. Johnson applied to be admitted to defend as landlord, and entered the plea of not guilty. This put Helm to the proof of his right to the possession of the undivided half interest sued for. In order to recover it was necessary for him to show a title good against the world, or that the defendant was estopped to question his title, which as between them must be taken to be good. There was no deraignment of title such as to entitle Helm to recover on the strength of his own title, and there is no estoppel shown against S. A. Johnson.

The parties do not claim the same interest and, therefore, cannot be said to claim title from a common source.

They claim distinct titles, and although from the same person, he is not the common source of title in the sense which gives rise to the well-known rule on that subject.

There is nothing shown to preclude Johnson from standing on the defensive and compelling Helm to show his right to the undivided half interest he claimed.

It seems to be true that prior to the suit there was no antagonism between Helm and Johnson as to the Wilburn half interest, and if Johnson desired to defend only as to his own half interest, he should have proceeded under section 2506 of the Code, and thereby the proper issue would have been presented between them, and upon the presentation made by the record Johnson would have succeeded in the case. But Johnson chose to defend as to the whole and although the reason for this course is not apparent to us, we think he had the right to defend as he did and put in issue Helm's claim and it was not maintained.

The judgment should have been for the defendant below.

*Reversed and remanded,* February 8, 1886.